## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES SINDELAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 25 C 7991 |
| | ) | |
| JON ESSIG, individually, BETHANY | ) | |
| ESSIG, individually, and SIMPLEFI | ) | |
| SOLUTIONS, LLC, an Illinois limited | ) | |
| liability company, G&P ADVISING | ) | |
| SERVICES, LLC, an Illinois limited liability | ) | |
| company, and LEG INVESTMENTS, an | ) | |
| Illinois limited liability company, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants Jon Essig, Bethany Essig, SimpleFi Solutions, LLC, G&P Advising Services, LLC, and LEG Investments, LLC's motion to dismiss Plaintiff Charles Sindelar's ("Sindelar") First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendants' motion is granted.

## BACKGROUND

### I.    Factual Background

The following facts are taken from the operative first amended complaint ("FAC") and are presumed true for the purposes of this motion.   All reasonable inferences are drawn in Sindelar's favor.

### a.  The Parties

Sindelar is the former 49% managing member of Defendant SimpleFi Solutions, LLC ("SimpleFi"), an Illinois limited liability company that provides financial planning and related services.   Jon Essig ("Jon") is the current sole owner and managing member of SimpleFi.   Defendant Bethany Essig ("Bethany") is Jon's wife.   Defendant G&P Advising Services, LLC ("G&P") is an Illinois limited liability company owned by Bethany.   Defendant LEG Investments, LLC ("LEG") is an Illinois limited liability company owned by Jon.   Throughout the FAC, Sindelar refers to Defendants collectively as the "Profit Protection Enterprise." *See generally* Dkt. # 1-2.

### b.  The Buyout Agreement

On November 1, 2017, Sindelar and Jon executed an Operating Agreement governing SimpleFi.  *Id*. ¶ 7; *id*. at 14–36, Ex. A.  On July 22, 2019, Sindelar and Jon executed a tender offer (the "Buyout Agreement") whereby Jon agreed to purchase Sindelar's 49% membership interest.  *Id*. ¶ 10; *id*. at 37–43, Ex. B.  The purchase price consisted of several components, including a "phantom equity" provision that entitled

Sindelar to a percentage of SimpleFi's profit distributions—25% for 2020, 15% for 2021, and 8% in perpetuity thereafter. *Id*. at 39, Ex. B.

As part of the Buyout Agreement, Sindelar agreed to a three-year non-competition covenant. The phantom equity provision, attached as "Appendix A - Phantom Equity Grant Letter" to the Buyout Agreement, contains a forfeiture provision stating: "In the event the Non-Compete agreement . . . is breached, the Phantom Equity Grant will immediately be terminated as of the date of that breach." *Id*.

### c. The Alleged Profit Protection Scheme and Fraudulent Transfers

Sindelar alleges that SimpleFi refused to make any phantom equity payments from 2020 through the present. According to the FAC, Jon provided two justifications for withholding payments in 2020 and 2021: first, that SimpleFi had no profits during the relevant periods; and second, that Sindelar had breached his noncompete obligations and thereby forfeited his phantom equity rights.

Sindelar alleges these justifications are pretextual and that Defendants engaged in a coordinated scheme—which Sindelar labels the "Profit Protection Scheme"—to funnel SimpleFi's profits to entities controlled by Jon, thereby artificially eliminating profits available for distribution to Sindelar. *Id*. ¶ 32. Sindelar contends this scheme was designed to deprive him of his contractual phantom equity payments.

The FAC identifies four alleged fraudulent transfers. First, on December 31, 2020, SimpleFi transferred $44,480 by wire to G&P, an entity that had been in existence for only two days and had performed no work for SimpleFi. Second, in 2021, SimpleFi

paid $195,000 to G&P for staffing and accounting services, despite the fact that Bethany (the owner of G&P) had no experience in either field. Third, in 2021, SimpleFi paid $75,000 to LEG as "prepaid rent" for commercial property located in Highland Park, Illinois—a property SimpleFi did not physically occupy until 2022. *Id*. ¶ 36. Fourth, in 2022, SimpleFi paid $77,000 in rent to LEG for the Highland Park property at a rate of approximately $53 per square foot, which Sindelar contends is substantially above market rates for comparable properties in the area. Sindelar alleges that these transfers depleted SimpleFi's profits and enabled Jon to claim that no funds were available for phantom equity distributions.

## II. Procedural History

Sindelar initially filed this action in the Circuit Court of DuPage County, Illinois on June 21, 2022, alleging a single claim for breach of contract against Jon and SimpleFi. Jon and SimpleFi subsequently filed a counterclaim, asserting, *inter alia*, Sindelar breached the noncompete agreement. The state court proceedings were protracted. The parties engaged in discovery disputes that resulted in two sanctions orders against Jon and SimpleFi—one on May 9, 2023, awarding Sindelar $300 in attorney's fees, and another on February 21, 2024, awarding $700 in fees and ordering production of SimpleFi's financial records. Dkt. #21, at 2. On February 19, 2025, Sindelar deposed Jon. *Id*. at 3. Sindelar subsequently deposed Bethany. *Id*.

Following these depositions, Sindelar filed the FAC on June 17, 2025, adding Bethany, G&P, and LEG as defendants and asserting Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. § 1962, claims for the first time. The FAC asserts six counts. Count I alleges a substantive violation of RICO, Section 1962(b) and Section 1962(c), against all Defendants. Count II alleges RICO conspiracy under Section 1962(d) against all Defendants. Count III alleges aiding and abetting fraudulent transfers and seeks treble damages under RICO, 18 U.S.C. § 1964(c), against all Defendants. Count IV asserts civil conspiracy under Illinois common law against all Defendants. Count V alleges violations of the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/5(a), against all Defendants. Count VI asserts breach of contract against Jon and SimpleFi only. Sindelar seeks compensatory damages, RICO treble damages, a court-ordered independent audit of SimpleFi's financial records, attorney's fees, and punitive damages.

Defendants timely removed the action to this Court on the basis of federal question jurisdiction. Defendants now move to dismiss Counts I through III of the FAC under Rule 12(b)(6), and request that the Court decline to exercise supplemental jurisdiction over the remaining state-law claims.

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v.*

5

*Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Where, as here, a RICO claim is predicated on mail or wire fraud, the heightened pleading standard of Rule 9(b) applies. *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019). Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This means the complaint must describe the "who, what, when, where, and how" of the alleged fraud. *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016). In cases involving multiple defendants, Rule 9(b) requires the plaintiff to "plead sufficient facts to notify each defendant of his alleged participation in the scheme." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998).

In ruling on a motion to dismiss, the Court may consider documents attached to the complaint, documents central to the complaint and referred to in it, and matters subject to judicial notice, without converting the motion into one for summary judgment. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

6

## DISCUSSION

### I.     Count I: Substantive RICO Violation

The FAC includes both Section 1962(b) and (c) claims under Count I.  In their original memoranda supporting dismissal of the federal claims, Defendants do not directly address this pleading issue but make references to Section 1962(b) in passing when arguing that the RICO claims predicated on Section 1962(c) should be dismissed. Sindelar makes no reference to Section 1962(b) in his response memoranda.  As discussed in further detail below, Section 1962(c) concerns the conduct of an enterprise's racketeering affairs, whereas Section 1962(b) addresses the acquisition or control over an enterprise through racketeering.  *See Starfish Inv. Corp. v. Hansen*, 370 F. Supp. 2d 759, 780 (N.D. Ill. 2005).  In other words, under Section 1962(b), the enterprise could typically be considered the victim of a defendant's racketeering activity, and the statute targets the infiltration or control of the enterprise through such activity.

At a high level, the FAC asserts that Defendants, the alleged bad actors that collectively comprise the Profit Protection Enterprise, participated in a pattern of racketeering activity, or a scheme, to shield SimpleFi's profits in order to deprive Sindelar of his profit distributions under the Buyout Agreement.  The FAC never alleges that Defendants acquired or maintained control of their Profit Protection Enterprise through the scheme.  *See, e.g.*, *Wallis v. Card Servs. Int'l, Inc.*, 2012 WL 1866374, at *10 (N.D. Ill. 2012) (to state a claim under Section 1962(b), the plaintiff must allege

that the defendants acquired or maintained an interest in or control of an enterprise through a pattern of racketeering activity.).  Thus, Section 1962(b) is inapplicable under Sindelar's theory of this case because of the absence of any allegations that Defendants were in control of an enterprise in this manner.

Moreover, although there are significant differences in Sections 1962(b) and (c), the "pattern of racketeering element" is fundamental to both of these RICO subsections. *See Rocha v. FedEx Corp.*, 15 F. Supp. 3d 796, 806 (N.D. Ill. 2014).  Therefore, to the extent that Sindelar intended to plead a separate RICO violation under Section 1962(b), it is dismissed for the same reasons Count I is dismissed for failure to allege a "pattern of racketeering activity" predicated on Section 1962(c) as outlined below.  *Starfish*, 370 F. Supp. 2d at 781 ("Because [the plaintiff] failed to allege that any of the moving defendants engaged in a pattern of racketeering activity, its claims against them under 18 U.S.C. §§ 1962(b) and (c) must be dismissed.").

Under Section 1962(c), a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  These requirements apply to both civil and criminal RICO violations.  In civil cases, however, RICO plaintiffs must also show injury to his business or property "by reason of" the RICO violation—that is, he must establish both "but for" and proximate causation.  18 U.S.C. § 1964(c); *Ratfield v. U.S. Drug Testing Laby's, Inc.*, 140 F.4th 849, 852 (7th Cir. 2025).  Defendants argue that the FAC fails

to allege a pattern of racketeering activity under Section 1962(c) and proximate cause under Section 1964(c).  The Court addresses these arguments below.

At the outset, the Court notes that since its enactment, the Seventh Circuit has repeatedly stressed the limited availability of civil RICO liability and confirmed that RICO does not transform "garden-variety" state-court business disputes involving allegations of fraud into federal lawsuits for treble damages.  *See Menzies*, 943 F.3d at 337 (citing *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992)); *Uniroyal Goodrich Tire Co. v. Mut. Trading Corp.*, 63 F.3d 516, 522 (7th Cir. 1995) ("The murkiness of RICO's parameters coupled with its alluring remedies have led many plaintiffs to take garden variety business disputes and dress them up as elaborate racketeering schemes.").

### a.  Proximate Causation

Assuming *arguendo* that the FAC adequately alleged a pattern of racketeering activity (for the purposes of evaluating the parties' arguments on this issue only), the Court finds that Plaintiff's proximate causation allegations withstand Defendants' Rule 12(b)(6) challenge, albeit by a narrow margin.

To bring a civil RICO claim, a plaintiff must show that he was injured "by reason of" the alleged Section 1962 violation.  18 U.S.C. § 1964(c).  The "by reason of" language requires both "but for" causation and proximate causation.  *Ratfield*, 140 F.4th at 852.  "[T]he central question" when assessing proximate cause is "whether the alleged [RICO] violation led directly to the plaintiff's injuries."  *Anza v. Ideal Steel*

9

*Supply Corp.*, 547 U.S. 451, 461 (2006). "The direct-relation requirement avoids the difficulties associated with attempting to ascertain the amount of a plaintiff's damages attributable to the [RICO] violation, as distinct from other, independent factors." *Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 654 (2008).

The FAC incorporates the Buyout Agreement and its attachments, including the Phantom Equity Grant Letter. Section 3 of the Phantom Equity Grant Letter provides: "In the event the Non-Compete agreement . . . is breached, the Phantom Equity Grant will immediately be terminated as of the date of that breach." Dkt. # 1-2, at 39, Ex. B. The FAC further alleges that Jon refused to make phantom equity payments for two reasons: that SimpleFi had no profits, and that Sindelar had breached his noncompete obligations.

Defendants argue that these allegations negate causation because Sindelar would have received no distributions regardless of any transfers to G&P or LEG. Assuming the transfers reduced SimpleFi's book profits to zero, in Defendants' view, Sindelar forfeited his phantom equity rights by breaching the noncompete provision and provides an independent basis for denying payment—even if SimpleFi had been flush with distributable cash. Defendants ask the Court to take judicial notice of their verified counterclaim[1] filed with its removal papers alleging that Sindelar breached his

---

[1] "[A] verified complaint is not just a pleading; it is also the equivalent of an affidavit for purposes of summary judgment, because it contains factual allegations that if included in an affidavit or deposition would be considered evidence, and not merely assertion." *Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017).

noncompete. *See* Dkt. # 1-3, at 55–68. The Court notes that Sindelar answered this counterclaim and it has been at issue for three years. While the Court expresses no opinion on the merits of the counterclaim, its existence underscores that Jon's invocation of the forfeiture provision is not a post-hoc litigation position but a contemporaneous basis for denying payment that predates the filing of the FAC.

Sindelar contends that the noncompete defense is pretextual and that he abided by his obligations under the noncompete. He further asserts the transfers reduced SimpleFi's profits, which in turn enabled Defendants to claim that no funds were available for distribution. Sindelar argues that causation is a factual issue inappropriate for resolution at this procedural posture in the litigation. The Court agrees with Sindelar on this point.

Defendants' argument might carry the day in future proceedings if they can provide admissible evidence that Sindelar did in fact breach the noncompete agreement. However, a determination on a contested factual dispute would be impermissible on a motion brought under Rule 12(b)(6).

### b. Pattern of Racketeering Activity

The RICO statute defines "pattern of racketeering activity" as requiring "at least two acts of racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). However, "while two acts are necessary, they may not be sufficient." *Sedima*, 473 U.S. at 496 n.14. To establish a pattern, a plaintiff must show that the predicate acts are related and

that they "amount to or pose a threat of continued criminal activity"—the so-called "continuity plus relationship" test. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Furthermore, the Seventh Circuit has warned that it does "not look favorably on many instances of mail and wire fraud to form a pattern." *Menzies*, 943 F.3d at 338 (internal quotations and citations omitted).

### i. The FAC Fails to Plead Two or More Predicate Acts

Because Sindelar's RICO claims are predicated on wire fraud, he must allege at least two predicate acts of wire fraud with the particularity required by Rule 9(b). *See Id*. The FAC identifies four allegedly fraudulent transfers. Paragraph 57 alleges that on December 31, 2020, SimpleFi transferred $44,480 by a wire transfer to G&P. Dkt. # 1-2, ¶ 57. The remaining three alleged transfers—approximately $195,000 to G&P in 2021 (*id*. ¶ 60), approximately $75,000 to LEG in 2021 (*id*. ¶ 61), and approximately $77,000 to LEG in 2022 (*Id*. ¶ 62)—do not allege that the payments were made by wire, do not specify the dates on which the payments occurred, and do not explain how these payments relate to paragraph 57's allegation of wire fraud.

Sindelar argues that paragraphs 60 through 62 "relate back" to paragraph 56, which generally alleges that the "wire fraud alleged in this case began in 2020." Dkt. # 21 at 7–8; *see also* Dkt. # 1-2, ¶ 56. The Court is not persuaded. Paragraphs 60 through 62 contain no cross-reference to paragraph 56. More fundamentally, Rule 9(b) requires that each predicate act be pleaded with particularity. *See Graue Mill Dev. Corp. v. Colonial Bank & Tr. Co.*, 927 F.2d 988, 992–93 (7th Cir. 1991) (explaining

12

that complaint must describe the predicate acts with specificity). A generalized allegation in one paragraph cannot supply the missing specificity for subsequent paragraphs that fail to identify when alleged payments occurred, how they were transmitted, or whether they involved the use of wires at all.

Accordingly, the Court finds that the FAC pleaded only one predicate act of wire fraud with the particularity required by Rule 9(b). This is facially insufficient to establish a "pattern" under 18 U.S.C. § 1961(5), which requires "at least two acts of racketeering activity."

### ii. The FAC Fails to Allege Interstate Transmission

Even if the FAC adequately pleaded multiple predicate acts, it would fail for an independent reason: the FAC does not allege that any wire transmission crossed state lines.

The wire fraud statute prohibits the transmission "by means of wire, radio, or television communication in interstate or foreign commerce" of any writings, signs, or signals for the purpose of executing a scheme to defraud. 18 U.S.C. § 1343. Courts have consistently interpreted this language to require that the alleged transmission actually cross state lines. *See United States v. Kieffer*, 681 F.3d 1143, 1153 (10th Cir. 2012); *see also Curtis v. Wilks*, 704 F. Supp. 2d 771, 788 (N.D. Ill. 2010) ("Where all parties are residents of Illinois, there is an absence of interstate communication required to establish wire fraud." (collecting cases)).

The FAC contains no allegation that any communication or payment crossed state lines. This omission is particularly significant given that all parties to this action are Illinois residents or Illinois limited liability companies, and the alleged transactions are quintessentially local in nature—payments between Illinois entities owned by an Illinois-resident married couple. Under these circumstances, it would be unreasonable to infer that the alleged wire transmissions crossed state lines. *See Harris Tr. & Sav. Bank v. Ellis*, 609 F. Supp. 1118, 1122 (N.D. Ill. 1985) ("The amended complaint fails to allege any use of interstate wires, and given the Illinois residence of all the parties it would not be reasonable to infer that any such use occurred."), *aff'd*, 810 F.2d 700 (7th Cir. 1987).

Sindelar invokes *United States v. O'Donovan*, 126 F.4th 17 (1st Cir. 2025), for the proposition that use of the internet alone satisfies the interstate commerce requirement. Even assuming the First Circuit's reasoning is persuasive, a question the Seventh Circuit has not resolved, *see United States v. Haas*, 37 F.4th 1256, 1265 (7th Cir. 2022) (acknowledging circuit split and declining to take a position), the FAC fails to allege that the internet was used to effectuate any of the challenged transfers. The Court declines to assume facts not pleaded.

### iii. The FAC Fails to Allege Continuity

Even if the FAC adequately plead multiple predicate acts transmitted in interstate commerce, the Court would nonetheless conclude that Sindelar has failed to allege the continuity necessary to establish a pattern of racketeering activity.

14

Continuity may be established in one of two ways: "closed-ended" continuity, which refers to "a closed period of repeated conduct," or "open-ended" continuity, which involves "past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241. Sindelar argues he has alleged open-ended continuity because the phantom equity obligation runs in perpetuity, creating an inherent threat of future harm.

The Court disagrees. To plead open-ended continuity, a plaintiff must allege specific facts that show a threat of repetition in the future. *See H.J. Inc.*, 492 U.S. at 241–42. Conclusory allegations that a continuing threat exists are insufficient. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 783 (7th Cir. 1994) ("A threat of continuity cannot be found from bald assertions such as 'James Elliot continues his racketeering activities.'"); *Guar. Residential Lending, Inc. v. Int'l Mortg. Ctr., Inc.*, 305 F. Supp. 2d 846, 860 (N.D. Ill. 2004) ("Such conclusory allegations . . . are not sufficient to allege open-ended continuity, [as] specific facts must support such conclusion." (collecting cases)).

Here, the FAC identifies four allegedly fraudulent transfers, all of which occurred between December 2020 and sometime in 2022—more than two-and-a-half years before the FAC was filed. Sindelar's conclusory assertions that the scheme "continues" are insufficient to establish open-ended continuity. Notably, Sindelar admits he has obtained extensive discovery, including SimpleFi's financial records from 2021 through the present, third-party bank and accounting records, and

15

depositions of both Jon and Bethany.  Dkt. # 21, at 2–3, 12–13.  Yet despite this far-ranging discovery, the FAC identifies no allegedly fraudulent transfers after 2022.  If the scheme were truly ongoing, one would expect Sindelar to have identified more recent transfers.  The absence of such allegations undermines Sindelar's contention that there is a genuine threat of future harm.  *See Potbelly Sandwich Works, LLC v. Grason*, 2020 WL 4748151, at *3 (N.D. Ill. 2020) (allegations of bad acts from 2017–2018 without ongoing violations insufficient to establish open-ended continuity).

Nor can Sindelar establish closed-ended continuity.[2]  The Seventh Circuit has identified several factors relevant to determining whether a closed-ended pattern exists: "(1) the number and variety of predicate acts and the length of time over which they were committed, (2) the number of victims, (3) the presence of separate schemes and (4) the occurrence of distinct injuries."  *Roger Whitmore's Auto. Servs., Inc. v. Lake Cnty.*, 424 F.3d 659, 673 (7th Cir. 2005).  Duration is the "most important" factor.  *Vicom*, 20 F.3d at 781.

Application of these factors compels the conclusion that the FAC fails to allege closed-ended continuity.  The FAC alleges only four transfers—all of the same general type (payments to entities controlled by the Essigs)—occurring over a period of approximately 12 to 24 months.  Under Seventh Circuit precedent, this duration is

---

[2] Sindelar failed to respond to this specific argument in his response.  Accordingly, the argument is waived.  *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

insufficient under the circumstances in this case. *See Menzies*, 943 F.3d at 338–39 (three years insufficient for single scheme). Moreover, the FAC alleges a single victim (Sindelar), a single scheme (the "Profit Protection Scheme"), and a single type of injury (deprivation of phantom equity payments). These factors uniformly weigh against finding a pattern of racketeering activity.

Sindelar's reliance on the perpetual nature of his phantom equity rights does not alter this conclusion.[3] The relevant inquiry is whether Defendants' alleged predicate acts—the transfers to G&P and LEG—pose a threat of repetition, not whether Sindelar has an ongoing contractual entitlement. The Court cannot infer a threat of future fraudulent transfers from the mere existence of a continuing payment obligation, particularly where Sindelar has had access to years of financial records and has identified no transfers after 2022.

For the foregoing reasons, the Court concludes that the FAC fails to allege a pattern of racketeering activity. Accordingly, Count I fails to state a claim upon which relief can be granted. Count I is dismissed.

---

[3] Sindelar's argument on this point appears to be predicated on an unstable foundation. The Illinois Supreme Court has recognized that "[c]ontracts of indefinite duration are terminable at the will of either party." *Jespersen v. Minn. Min. & Mfg. Co.*, 183 Ill. 2d 290, 293 (1998); *see also Rico Indus., Inc. v. TLC Grp., Inc.*, 2014 IL App (1st) 131522, ¶ 19 ("we find that perpetual contracts are contrary to public policy"). If the contract provision entitling Sindelar 8% interest in perpetuity beginning in 2022 (Dkt. # 1-2, at 39, Ex. B) is terminable, the alleged 2022 fraudulent transfer may be baseless, possibly limiting Sindelar to three predicate acts, and thereby decreasing the span of time the acts were committed to merely 12 months. The Court also notes that the FAC only alleges that Jon withheld Sindelar's interest percentage in 2020 and 2021 due to SimpleFi having no profits during those two periods. The FAC does not specifically allege SimpleFi's justification as to why it did not distribute funds to Sindelar in 2022 and thereafter.

## II. Count II: RICO Conspiracy

Count II alleges a conspiracy to violate RICO under Section 1962(d). "To prove a RICO conspiracy, a plaintiff must show that the defendants agreed to commit, or participate in the commission of, two predicate acts." *United Food & Com. Workers Unions v. Walgreen Co.*, 719 F.3d 849, 856–57 (7th Cir. 2013). A RICO conspiracy claim necessarily fails where the underlying substantive RICO claim fails. *See Amerikal Prods. Corp. v. Cave*, 2025 WL 1883915, at *6 (N.D. Ill. 2025). Because Count I fails for the reasons stated above, Count II fails as well. Count II is dismissed.

## III. Count III: Aiding and Abetting Fraudulent Transfers

Count III is styled as a claim for "aiding and abetting fraudulent transfers" and seeks treble damages under 18 U.S.C. § 1964(c). The Court has difficulty discerning the precise legal theory underlying this count. In any event, Count III incorporates the allegations of the previous two counts and depends on the existence of a pattern of racketeering activity. Thus, to the extent Count III asserts a RICO claim predicated on Section 1962(c) and (d), it fails for the same reasons as Counts I and II. Count III is dismissed.

## IV. State Law Claims

Counts IV through VI assert claims under Illinois law: civil conspiracy (Count IV), violation of the Illinois Uniform Fraudulent Transfer Act (Count V), and breach of contract (Count VI). Because the Court grants dismissal of Plaintiff's federal claims, it does not have subject matter jurisdiction and thus declines to exercise its supplemental

18

jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(c)(3). ("The district courts may decline to exercise supplemental jurisdiction [if] the district court has dismissed all claims over which it has original jurisdiction."); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [12] is granted. Plaintiff's RICO claims (Counts I, II, and III) are dismissed without prejudice. Plaintiff is granted leave to file a Second Amended Complaint by February 3, 2026. If Plaintiff decides not to replead, Plaintiff's federal claims will be dismissed with prejudice and the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims (Counts IV, V, and VI) and remand the action to state court. If an amended complaint is not filed by 2/3/2026, a joint status report shall be due on that date.

It is so ordered.

Dated: 1/13/2026

_Charles P. Kocoras_

Charles P. Kocoras
United States District Judge